UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| DUKE'S ROOFING AND EXTERIOR CONSTRUCTION, LLC, | ) ) ) |
| Plaintiff / Counterclaim Defendant, | ) ) |
| v. | ) ) |
| LEXIS COATINGS, LLC, | ) No. 5:16-CV-432-REW ) |
| Defendant / Counterclaim Plaintiff / Third Party Plaintiff, | ) ) OPINION & ORDER ) |
| v. | ) ) |
| SHERMAN-CARTER-BARNHART ARCHITECTS, PLLC, | ) ) ) |
| Third Party Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Lexis Coatings, LLC (Lexis), seeks summary judgment on all claims Duke's Roofing and Exterior Construction, LLC (Duke's), asserted against it, as well as on its own Counterclaim. DE #41 (Motion). The matter is fully briefed and ripe for consideration. *See* DE ##49, 50. For the following reasons, the Court **GRANTS** DE #41. Lexis faces no liability, on this record, for the botched roof recoating job, and Duke's is liable to Lexis for unpaid invoices.

I.  **BACKGROUND**

In mid-2014, Duke's, a roofing contractor, agreed to recoat the Clark County middle school's roof.[1] The Project was "to put a coating over the top of the th[e existing]

---

[1] Mirroring the parties' practice, the Court refers to this endeavor as the "Project."

1

Kynar metal coating." DE #41-2, at 4 (Depo. p. 14). Lexis, for its part, manufactures and sells roofing products, including the coating(s) at issue—EnergyGuard Water-Based Acrylic Coating and EnergyMax Acrylic Elastomeric Roof Coating. By September 2015, the recoating efforts ended up being, for particular reasons, "not acceptable." DE #41-24. This case is primarily about allocating responsibility for that failure.

II. **STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106.

S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2557 (Brennan, J., dissenting) (citation omitted); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it" (citation and internal quotation marks omitted)); *see also Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

## III. ANALYSIS

### A. *Duke's Complaint*

To begin, Duke's, in DE #49 (Response), made no argument as to, and thus abandoned, Counts 1, 3, and 4 of its Complaint (DE #1).[2] The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). The Court therefore "properly decline[s] to consider the merits of" and grants summary judgment on Counts 1, 3, and 4 "because [Duke's] failed to address [them] in . . . [its] response to the summary judgment motion[.]" *Hicks v. Concorde Career College*, 449 F. App'x 484, 487 (6th Cir. 2011) (citing *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) ("Accordingly, because Harper failed to properly present the issue to the district court in response to Vigilant's motion for summary

---

[2] Section II.A of the Response merely contests Lexis's reading of two reports. *See* DE #49, at 5-7. Section II.B addresses "implied warranties." *See id.* at 7-9. Duke's nowhere argues concerning breach of contract, negligence, or indemnity. The Amended Complaint, DE #25, merely addressed deficiencies in the diversity allegations; it did not alter the substance of the claims. *See* DE #19 (Minute Entry Order).

4

judgment, that issue is waived.")) (affirming summary judgment grant as to the unargued claims); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (same principle); *Conner v. Hardee's Food Sys., Inc.*, 65 F. App'x 19, 24-25 (6th Cir. 2003) (same); *see also Campbell v. Nally*, No. 2:10-cv-1129, 2012 WL 4513722, at *12 (S.D. Ohio Oct. 1, 2012) (collecting cases). Accordingly, of the claims in Duke's Complaint, the Court evaluates Count 2, labeled "Breach of Warranty," alone.

Count 2 alleges that "Lexis expressly and impliedly warranted that its roof coating material would meet the requirements stated in the specifications for the Project, and would be fit for the particular purpose as intended for use by Duke's in performing its contract[.]" DE #1, at ¶ 20. Per Duke's, the "EnergyGuard Water-Based Acrylic Coating furnished by Lexis failed to comply with the requirements contained in the specifications for the Project and was not fit for the particular purpose as intended for use by Duke's in performing its contract[.]" *Id.* at ¶ 21. Duke's calls this a "breach by Lexis of its express and implied warranty[.]" *Id.* at ¶ 22. Lexis denies liability on Count 2. DE #4 (Answer), at ¶¶ 17-20.

Any express warranty claim plainly fails. In this context, KRS 355.2-313, of the Kentucky UCC, governs.[3] An express warranty requires that the warranty particulars (*i.e.*, the "affirmation of fact or promise" or the "description") be part of the basis of the parties' bargain. *See* KRS 355.2-313(1)(a)-(b). Here, Duke's asserts that Lexis warranted that it would meet the Owner's specifications. *See* DE #1, at ¶¶ 10-11 (describing warranty as Lexis's promise that the coating would "comply[] in all respects to the

---

[3] The parties agree that substantive Kentucky law applies in this diversity case; the Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). The parties also agree that the Kentucky UCC is validly in play as to this transaction in goods.

specifications provided by the Owner for the Project."); *id.* (claiming Lexis "failed to comply with the specifications for the Project"). Lexis flatly denies seeing any Project specifications at the time of contract formation. DE #8, at ¶ 11. The record contains no proof to indicate that Lexis knew of, saw, or agreed to any such specifications. DE #41-29, at Answers 10 & 11. Indeed, the coating Duke's purchased is not one the specs even contemplated. As such, the Owner's specifications could not have been a part of the parties' agreement. If the Owner's specs are the warranty basis and Lexis never saw or agreed to them, there is no express warranty. *See also* DE #41-29 (Duke's agreeing there was no written warranty: "the promised warranty was not obtained"). While arguably also abandoned in the briefing, and thus subject to dismissal on that basis, there is no triable express warranty claim.

Duke's endeavors to pin implied warranty claims on KRS 355.2-314 & 355.2-315. *See* DE #49, at 7-9. The Court rejects the KRS 355.2-314 implied warranty of merchantability theory because it is not a claim Duke's Complaint makes. *See Desparois v. Perrysburg Exempted Village Sch. Dist.*, 455 F. App'x 659, 665-66 (6th Cir. 2012) (rejecting the notion that a plaintiff is "entitled to liberal construction of [its] complaint to include new theory raised for first time at summary judgment stage"); *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." (citing many cases for this proposition)); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been

filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories[.]").

Complaint ¶ 20 limited the relevant claim to an argument that Lexis "impliedly warranted that its roof coating material would meet the requirements **stated in the specifications for the Project, and would be fit for the particular purpose intended for use by Duke's**[.]" DE #1, at ¶ 20 (emphasis added). That language evokes only an implied warranty of fitness for a particular purpose, not an implied warranty of merchantability. Similarly, ¶¶ 1-18, which Count 2 incorporates by reference, say nothing about an implied warranty of merchantability. A complaint, simply put, must "give the defendant fair notice of the claim and its supporting facts," *Tucker*, 407 F.3d at 788, and Duke's Complaint did not do so, as to this new, distinct theory. *Cf.* DE #41-1, at 15-18 (Lexis not arguing (not knowing to argue) concerning an implied warranty of merchantability). Duke's does not contest this.

As to the second (actually pleaded) category,

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

KRS 355.2-315. Duke's entire substantive argument regarding an implied warranty of fitness for a particular purpose is in one paragraph. *See* DE #49, at 8-9. The theory is that Duke's relied "on the expertise of Lexis to furnish a product that would, when applied, coat the roof in a Shamrock Green color." *Id.* at 9. "A jury could," Duke's asserts, "find that Lexis breached its warranty by failing to provide goods which would provide a uniform color coating after application by Duke's." *Id.*

7

As the text of KRS 355.2-315 indicates, the "existence of an implied warranty of fitness for a particular purpose is contingent on two general facts. First, the seller must be aware at the time of contracting of a particular purpose for which the buyer intends to use the goods. Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose." *Price Bros. Co. v. Phil. Gear Corp.*, 649 F.2d 416, 423 (6th Cir. 1981); *see also, e.g.*, *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 851 (W.D. Ky. 2016) (same); *Int'l Harvester Co. of Am. v. Bean*, 169 S.W. 549, 550 (Ky. 1914) (same principles); *Ingram v. Oasis Investments, LLC*, No. 5:16-CV-206-TBR, 2017 WL 6508362, at *4 (W.D. Ky. Dec. 19, 2017) (calling these prongs "the two elements of implied warranty of fitness for a particular purpose").

The theory stumbles off the starting block: Duke's points to (and the Court sees) no evidence that Lexis was aware of any particular purpose for which Duke's intended to use the coating. Quite to the contrary, Duke's (unsurprisingly) says it intended to use the Shamrock Green roof coating to coat the roof Shamrock Green. DE #49, at 8-9; *see also, e.g.*, DE ##41-29, at 7-9; 41-7, at 6. Coating a roof is an ordinary, common use of roof coating, not a particular one. Duke's points to no proof that Lexis was aware, during the pertinent period, of relevant particularities of *this* roof or product usage (at least none that Duke's identified in the briefing)—for example, that the roof was Kynar-coated. *See, e.g.*, DE ##41-10, at 7 (Alexander Cua, of Lexis,[4] at some point post-8/20/15: "I never knew this job was Kynar until I spoke to you yesterday."); 12, at ¶ 25 (Duke's admitting that "no request for the specifications for the project was ever received from [Lexis] during

---

[4] The record indicates that Cua is "Lexis's sole member," DE #25, at ¶ 2, and a (or the) Lexis "salesperson," *see, e.g.*, DE #8-6, at 2.

the extended time period during which both Duke's and [Lexis] were collaborating in an effort to resolve the issues" (emphasis removed)); 41-3 (Specifications, not mentioning Kynar); 41-2, at 4 (Depo. pp. 13-15); *id.* at 8 (Depo. p. 32) (confirming that the Specifications do not "reflect[] that the roof to be coated had been previously coated with Kynar"); *id.* at 9 (Depo. p. 34); 41-4, at 3 (Depo. p. 10); *id.* at 10 (Depo. pp. 39-40); 41-7, at 2, 6; 41-25, at 10 (describing reasons that knowledge of Kynar involvement is important). "A plaintiff who seeks to recover under [KRS] 355.2-315 based upon a defect in a product must show more than that the product was used for its ordinary purpose." *Smart & Assocs.*, 226 F. Supp. 3d at 851. Duke's, as described, shows no such thing. *See also, e.g.*, *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (holding that a claim of "an implied warranty of fitness for a particular purpose fails because Mrs. Dalton's use of the 2020 Pump was not peculiar" and because she "used the 2020 Pump for its ordinary purpose"); *Smart & Assocs.*, 226 F. Supp. 3d at 851 ("Nothing in the record indicates that the twistee shots sold by Defendants were to be used for anything other than their ordinary purpose—consumption by adult beverage-drinkers.").

To that point, Duke's identified—and the Court sees—no evidence that Lexis "adapted" its product to a "particular use" Duke's informed it of. *See Bean*, 169 S.W. at 550. Lexis simply provided Duke's a price quote and then, per Duke's independent ordering decision, supplied the nonspecialized coating ordered. Again, the Duke's argument is quite limited, boiling down to a notion that it "was relying on the expertise of Lexis to furnish a product that would, when applied, coat the roof *in a Shamrock Green color*." DE #49, at 9 (faulting Lexis for allegedly "failing to provide goods which would provide *a uniform color coating*") (emphases added). One of many problems for Duke's,

9

as to this theory, is that it undeniably knew Lexis could not guarantee Shamrock Green color consistency. Lexis, via Cua, explicitly warned Duke's that the "green color is not an easy color to match" and that it "is possible that this [a subsequent] batch wont [sic] be an exact match to the first one we sent." DE #41-16, at 1. Lexis even told Duke's that "the pigments are all special order[.]" *Id.* Duke's continued the relationship nevertheless.

More importantly, as to the implied warranty claim, Duke's presents no evidence that Lexis was aware of any *particular purpose* associated with the Shamrock Green color. *Cf. Jenkins Brick Co. v. Waldrop*, 384 So.2d 117, 118-19 (Ala. 1980) (no implied warranty of fitness for a particular purpose regarding "brick coloration variations"); *Lamagna v. Montauk Rug & Carpet*, 781 N.Y.S.2d 625, No. 2002-1724 SC, 2003 WL 23156725, at *1 (Sup. Ct. Nov. 21, 2003) (table) (no implied warranty of fitness for a particular purpose when a water leak "caused one of the two colors of the carpeting to run," although Defendant knew the carpet "was to be used in [Plaintiffs'] basement and that a dehumidifier and air conditioning equipment were located there"). This is not a case involving "a tailored use of . . . specific goods known to the seller rather than . . . an ordinary characteristic or suitability common to goods of that general type." *See Golden v. Den-Mat Corp.*, 276 P.3d 773, 799-800 (Kan. Ct. App. 2012) (holding there was a jury question concerning an implied warranty of fitness for a particular purpose when Plaintiff "discussed her desire for very white teeth": "Golden made clear a specific need she wanted the veneers to satisfy and sought affirmation from Dr. Gill the Cerinate veneers would work."). This case is unlike "a buyer of shoes inform[ing] the seller he or she intends to go mountain climbing and elicit[ing] the seller's help in selecting appropriate footwear," or a buyer informing a seller of her desire for "strikingly white teeth, even if

10

some people . . . might find them unnatural and unflattering" and the seller guaranteeing "that porcelain dental appliances do not discolor or stain." *See id.* at 799. If, on the other hand, as here, "a purchaser buys an article which can be ordinarily obtained upon the market, and without informing the seller as to the particular use which is expected to be made of it, and when the purchaser is ordinarily acquainted with the character of work performed by such article, there will be no implied warranty of the fitness of the thing purchased." *Glover Mach. Works v. Cooke-Jellico Coal Co.*, 191 S.W. 516, 518 (Ky. 1917). There is no mention of Shamrock Green, or a particular desire for precise color uniformity, in the Project Specifications. *See* DE #41-3, at 2 ("Color: Tint finish coat color to match owner's existing metal roof finish color"); *e.g.*, *id.* at 4 (expressing an overall concern with avoiding "insufficient dry mil thickness").

Further, as to the coloration, Duke's does not establish that it "rel[ied] upon the skill and know-how of [Lexis] in [the] selection of the product." *Agric. Servs. Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.*, 551 F.2d 1057, 1065 (6th Cir. 1977). To the contrary, the proof indicates, quite logically, that *other actors* chose Shamrock Green; Lexis, the product supplier, did not. *See* DE ##41-11 (Duke's informing Lexis, "They changed the color to green, but have not given us their color selection as of yet."); 41-14 ("The owner informed me this morning that they have chosen sample #2."); 41-18 (Duke's: "We need to order . . . 90 buckets of color Shamrock Green[.]"); 49-4 (Email indicating that Duke's "forward[ed]" "the color selection" to Lexis). Quite simply, "there is no such implied warranty . . . when the buyer exercises his own judgment in the selection of the goods[.]" *Halterman v. Louisville Bridge & Iron Co.*, 254 S.W.2d 493, 494 (Ky. 1953). In Kentucky, a "buyer is considered his own best judge when he exercises his own judgment

11

in the selection of goods, and the law in such instances does not impose any obligation upon the seller to exercise his judgment for that of the buyer as to the suitability of the goods purchased." *Id.* at 494-95 ("[A]cting upon his own desires, [a buyer] takes his own chances as to the fitness of the article, and should not be permitted to complain of the seller who has supplied him with the very thing he sought.").

Even if Duke's succeeded in framing tint as a warranted particular purpose, the Court sees the record as wholly one-sided on the coloration claim. As noted, Lexis alerted Duke's that ordering the color in different batches might mean an imperfect match, order to order. Lexis's expert indicates such variation is typical between special-ordered tinted coatings. *See* DE #41-26, at 2 ("Based on my experience it is common for the color of coating to vary from batch to batch. Tinted coatings should be ordered in one batch to avoid variations in color. This practice is very common and accepted in the roofing industry."). The expert, unopposed, also specifically blamed application and preparation for the performance issues. *See id.* ("Based on my experience, it is my opinion to a degree of reasonable certainty that the most likely cause for the coating to differ in color from panel to panel, is due to the fact that Duke's used an incorrect primer, failed to use any primer, or used different color primer before applying the top coat coating."). Although there may be some factual disputes over, *e.g.*, temperature at application, there is no question on several key matters, discussed at length in this Opinion. Thus, Duke's ordered a product not in spec relative to the Project and did not consult with Lexis about coating the Kynar-covered roof. Although the specifications required Duke's to consult with the manufacturer and meet with the manufacturer on site, Duke's did not fulfill those requirements. Further, the specs called for a particular type of coating, but Duke's

on its own ordered a different Lexis product. The specs called for use of a specified primer; Duke's used a base coat, rather than the requisite primer, on a significant part of the roof. Lexis's expert, again unopposed, pointed to those installation choices as leading to coating failure.[5]

Further, there is uncontradicted objective proof in the record, relating to coating thickness, that shows defaults in proper application. *See* DE #41-25, at 10-11 ("The coating installed was not installed per the manufacturer's specifications or the specifications provided by Sherman Carter Barnhart[.]"; "The coating thickness varies drastically. . . . This installation appears not meet [sic] SCB specifications."); *id.* at 9 (noting areas undersprayed "where the existing finish is exposed"); *id.* at 11 (noting measurements showing coverage thickness out of spec). Indeed, the Board's consultant, again without opposition in this record, determined that the roof coating had failed and could not be cured. *See id.* at 35 ("The elastomeric coating on the metal roof system cannot be repaired or recoated."). Thus, even if there were a problem with Lexis's color performance, that cosmetic problem would not matter given the need to correct the foundational issues introduced by Duke's in its mis-selection of the proper coating,

---

[5] The Court does not view the Oliver Affidavit (DE #49-10) and Specialty Coatings report (DE #49-9) as foreclosing summary judgment. The Oliver Affidavit is suspect given the meteorological and delivery date / application data in the record and given the objective measurements regarding overspray / underspray. However, the Court does not weigh credibility or make its decision based on the temperature questions. Those discrete topics are ultimately not material to resolution of the case, as discussed throughout this Opinion. Further, although the Specialty Coatings report alleges "severe" color variation, it does not address any of the application criticisms or facts raised elsewhere in the record. Perhaps Specialty Coatings contradicts Armstrong on color variability, but Specialty Coatings does not link any criticism to coating failure and does not account for the myriad other issues leading to judgment against Duke's. The Specialty Coatings report, even if credited, has no material impact on the Court's warranty analysis, for the reasons discussed in this Opinion.

failure to prime (per the specs), and failure to consult with the manufacturer about the suitability of the product for this application. Lexis has the only expert proof on the topic of failure, and there is nothing in the record to suggest that Lexis's product was the problem behind Project failure.

Lexis, on this record and per this analysis, did not impliedly warrant its product as fit for a particular purpose. There is no jury question on this claim. Based on this sequential evaluation, the Court grants Lexis summary judgment on all claims Duke's asserted against it.[6]

## B. Lexis's Counterclaim

Lexis also seeks summary judgment on its Counterclaim. DE #41-1, at 23-25. Duke's did not oppose.[7] *See* DE #50 (Reply), at 2 ("Duke's also failed to raise any defense in opposition to Lexis'[s] motion for summary judgment on its counterclaim[.]"). The Counterclaim asserts breach of contract and unjust enrichment theories, centering on Duke's nonpayment of two invoices. DE #8, at 10-17.

On the record as developed, this is not a close call. Duke's admitted that it "and Lexis had valid and enforceable contracts for the sale of goods." *See* DE #12 (Answer), at ¶ 32 (admitting Counterclaim ¶ 33); *see also* DE ##41-17 & 41-18 (Jan. 2015 emails

---

[6] This holding moots DE #40 and Lexis's third-party indemnity claim. *See, e.g.*, DE ##42, at 3 (Lexis stating that the third-party claim is relevant only "if it [Lexis] is determined to have any liability to Duke's in this case" or "should Duke's ultimately prevail on any of its claims against Lexis"); *id.* at 12 (same: "should Duke's claim[s] against Lexis survive to trial"); 21, at ¶ 50.

[7] Failure to oppose, in this context, is not itself sufficient grounds for the Court to grant the motion; summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (per curiam). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to oppose is obviously consequential, though, if the precipitating motion has merit under the summary judgment rubric.

ordering product); 41-21 (July 2015 texts & accompanying $0.00 invoice). The two invoices at issue—the Fourth and Fifth—are at DE ##41-19 ($3,562.40, dated 1/21/15) and 41-20 ($4,731.86, dated 6/10/15). Duke's admitted that it "never paid the Fourth or Fifth invoices[.]" DE #12, at ¶ 18; *see also, e.g.*, DE #41-7, at 7.[8]

"To prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville / Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009); *see also, e.g.*, KRS 355.2-607; KRS 355.2-703; KRS 355.2-709. Lexis, here, meets this test.[9] Considering the undisputed facts of record, in light of the non-objection from Duke's, and applying the relevant law, the Court concludes that Lexis has established breach of contract and that Duke's is liable to Lexis for $8,294.26, the sum of the unpaid invoices.[10] *See, e.g., Six L's Packing Co., Inc. v. Beale*, 524 F. App'x

---

[8] Lexis describes that Duke's "initially rejected the products shipped under the fifth invoice[.]" DE #41-1, at 24. However, Lexis says that it "sent a replacement shipment which Duke's subsequently accepted[.]" *Id.* Duke's does not contest this factual description, which the record supports, *see* DE #41-21, or argue that these events render the Fifth invoice non-payable or a nullity.

[9] Liability would also attach under the unjust enrichment theory. "To recover on a claim of unjust enrichment a plaintiff is required to prove the following three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017) (internal quotation marks and alteration removed). Lexis satisfies these elements, on this record, as Duke's does not contest. The Court, though, bases the monetary award on contract breach; Lexis described its unjust enrichment theory as a mere "[a]lternative[]" to the primary breach of contract count. *See* DE #41-1, at 25; *see also Superior Steel*, 540 S.W.3d at 778 (noting that "unjust enrichment is unavailable when the terms of an express contract control").

[10] Lexis also requests, with no analysis or citation to authority, an award of "interest, late charges, costs and attorney fees." *See id.* The Court declines to award additional contract sums that the requester makes no reasoned effort to justify. Lexis does not address whether the referenced "Application To Open An Account," which contains a reference to an "Overdue Finance Charge[]" of "1.5% per month on all account balances

15

148, 152-55 (6th Cir. 2013) (affirming grant of summary judgment on liability for unpaid invoices); *In re Conneaut Metalcasters Inc.*, 124 F.3d 197, Nos. 96-3417, 96-3460, 1997 WL 560054, at *6 (6th Cir. Sept. 5, 1997) (table) ("The failure to pay on invoices for orders which Emco received is a breach of contract[.]"); *Ooten Coal & Constr. Co. v. Elmo Greer & Sons, LLC*, No. 2008-CA-10-MR, 2009 WL 414043, at *2-3 (Ky. Ct. App. Feb. 20, 2009); *Action Capital Corp. v. Electro-Motive Diesel, Inc.*, No. 3:10-CV-434, 2011 WL 30766, at *5 (W.D. Ky. Jan. 5, 2011) (contemplating that a party "could properly lodge an action for breach as a result of . . . unpaid invoices").

## IV. CONCLUSION

For these reasons, and on the terms stated, the Court **GRANTS** DE #41 and will enter a separate Judgment.

---

which are past due," is an enforceable contract. *See* DE #41-8. Lexis is not a signatory to that document. Similar issues plague the reference to a "FINANCE CHARGE[]" of "2% per month interest on past due accounts" on the relevant invoices. *See* DE ##8-5 & 8-6. Further, the invoices textually limit liability for "expenses and legal fees" to scenarios where Lexis "turn[s] over" the "account" to "a collection agent." *See id.* Similarly, the "Application" says, after referencing an account being "forwarded to a collection agency," "Customer is responsible for all collection related legal and attorney fees." *See* DE #41-8. Lexis, though the movant, addresses none of this with specificity. The Court declines to begin traversing a minefield the movant itself avoids entering.

The Court does, though, find statute-based interest awards appropriate. "In diversity cases, state law governs prejudgment interest and federal law governs postjudgment interest." *Jack Henry & Assocs., Inc. v. BSC, Inc.*, 753 F. Supp. 2d 665, 667 (E.D. Ky. 2010). "Prejudgment interest is limited to the legal rate, found in KRS 360.010, of 8%." *Fields v. Fields*, 58 S.W.3d 464, 467 (Ky. 2001). Prejudgment "interest is due when," as here, "there is an undisputed claim in a liquidated amount." *Wittmer v. Jones*, 864 S.W.2d 885, 891 (Ky. 1993). In this situation, Lexis is "entitled to interest at the legal rate of eight percent (8%) per annum from the date that each payment was due and remained unpaid." *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004) (footnote removed); *Osborn v. Griffin*, 865 F.3d 417, 456 (6th Cir. 2017) ("must award" 8% in such a scenario); *Poundstone v. Patriot Coal Co., Inc.*, 485 F.3d 891, 903 (6th Cir. 2007) (same). [Again, the parties made no argument as to the "FINANCE CHARGES" on the applicable invoices. With no litigant advocacy, the Court finds operation of the statutory default appropriate.] 28 U.S.C. § 1961 governs the award of postjudgment interest.

This the 30th day of August, 2018.

Signed By:
*Robert E. Wier*   REW
United States District Judge